Brent D George (SBN 174363)
LAW OFFICES OF BRENT D GEORGE
1337 E Thousand Oaks Blvd Ste 206
Thousand Oaks, CA 91362
Telephone: 805-494-8400
FAX: 888-389-9815

Attorney for the Debtor

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| IN RE:<br><br>KELLY JEAN MATTEY,<br><br><br><br><br><br><br><br><br><br><br>DEBTOR. | Case No.: 14-11039-AA<br><br>CHAPTER: 7<br><br>**DEBTOR'S OPPOSITION TO OBJECTION TO EXEMPTION OF $500,000.00 SPOUSAL SUPPORT**<br><br>Hearing Date: May 28, 2014<br>Hearing Time: 10:30 AM<br>Courtroom: 301<br>Location: 21041 Burbank Blvd., Woodland Hills, CA 91367<br><br>[FILED CONCURRENTLY ALONG WITH: DECLARATION OF DEBTOR IN SUPPORT THEREOF; DECLARATION OF CRAIG MATTEY; DECLARATION OF THOMAS HABBICK; REQUEST FOR JUDICIAL NOTICE] |

Debtor, by counsel, hereby submits her opposition to the Objection to Exemption of $500,000.00 Spousal Support (hereafter referred to as "Objection"), and in support thereof avers as follows:

Prefatory Statement

"[E]xemptions are generally construed broadly in favor of the debtor." In re Martin, 269 B.R. 119, 121 (Bankr. M.D.Pa.2001) (citing In re Barker, 768 F.2d 191, 196 (7th Cir.1985)). When a party objects to a debtor's exemption claim, it bears the burden of proving that a particular exemption is not available. Fed. R. Bankr.P. 4003(c); In re Hodes, 402 F.3d 1005, 1010 (10th Cir.2005).

Accordingly, in this case Stephanie White (hereafter "Movant") bears the burden of proving that the Award does not constitute "alimony, support or maintenance" under CCP § 703.140 (b) (10) (d).

Debtor will show below that the instant Objection fails expectation; that the same is riddled with factual inaccuracies and even misrepresentations, and that in fact existing law supports Debtor's exemption of the $500,000.00 Spousal Support.

**I. Facts**

1.    Debtor and former husband Craig Mattey married on May 6, 1989. They separated on February 9, 2011 after a marriage of 21 years and 10 months.

2.    Debtor filed a Petition for Dissolution of Marriage against former husband Craig Mattey in or about April 2011 with the Ventura County Superior Court (hereafter "State Court").

3.    On December 8, 2011, the State Court approved a Stipulation between Debtor and her former husband regarding spousal support in favor of the Debtor. Said Stipulation and Order Regarding Support was filed and entered in the State Court's docket on December 12, 2011, a copy of which is attached herewith as Exhibit "A", forming an integral part hereof.

4.    On August 16, 2012, a Status Only Judgment was filed and entered by the State Court.

5. During a hearing on February 6, 2013 in the State Court, the issue of modification of the spousal support was heard by the court. In the said hearing, the Debtor was represented by the herein Movant as Debtor's Divorce Attorney. A true copy of the Reporter's Transcript of the Proceedings of February 6, 2013 is attached herewith as Exhibit "B", forming an integral part hereof.

6. On February 22, 2013, the State Court issued an Earnings Assignment Order for Spousal Support whereby Debtor was to receive from Craig Mattey (Debtor's former husband) a monthly spousal support of $2000.00. Said Order was filed and entered on February 26, 2013, a copy of which is attached herewith as Exhibit "C", forming an integral part hereof.

7. On May 2, 2013, the State Court again issued an Earnings Assignment Order for Spousal Support whereby Debtor was to receive from Craig Mattey (Debtor's former husband) a monthly spousal support of $2000.00, and additional $200.00 per month for spousal support arrearages. Said Order was filed and entered on May 2, a copy of which is attached herewith as Exhibit "D", forming an integral part hereof.

8. On January 23, 2014, the State Court issued a Judgment on the Reserved Issues on Debtor's and former husband's dissolution matter, attached therewith was a Stipulation for Judgment wherein Debtor was entitled, *among others*, to a non modifiable Spousal Support in the total amount of $500,000.00, payable for the first 12 months from execution of the stipulation in the amount of $2,336.00 per month, and $2,500.00 per month after the first 12 months until the entire $500,000.00 spousal support is paid in full. Said Judgment on Reserved Issues and Stipulation for Judgment was filed and entered in the State Court's docket on January 28, 2014, a copy of which is attached herewith as Exhibit "E", forming an integral part hereof.

9. On February 28, 2014, Debtor filed a Voluntary Chapter 7 Petition (the present case) listing the $500,000.00 spousal support as her asset in Schedule B, and exempting the same pursuant to California Code of Civil Procedure (CCP) § 703.140 (b) (10) (d) in Schedule C. Copies of both Schedules B and C highlighting the listing and exemption of the $500,000.00 spousal support are attached herewith as Exhibit "F", forming an integral part hereof.

10. The initial 341a meeting of creditors was held on March 31, 2014, which was continued to April 28, 2014 pending submission by the Debtor of a copy of the Marital Settlement Agreement.

11. On April 29, 2014, the Chapter 7 Trustee entered in the court docket his Report of No Distribution specifically indicating that "…*that there is no property available for distribution from the estate over and above that exempted by law*…" [Docket Document No. 11].

12. On April 29, 2014, Movant filed the present Objection on the following grounds:

12.1 The $500,000.00 asset is not a spousal support;

12.2 The $500,000.00 asset is not necessary for the Debtor's Support;

12.3 The Debtor has acted in bad faith.

13. In support of the Objection, Movant attached as Exhibit "1" a copy of the Judgment on Reserved Issues with the Stipulation for Judgment (Debtor's Exhibit "E").

## II. Issues

A. Whether or not the $500,000.00 listed in Debtor's Schedule B and exempted in Schedule C is a spousal support for purposes of exemption.
B. Assuming that the $500,000.00 is a spousal support, whether the same is necessary for the Debtor's support;
C. Whether or not Debtor acted in bad faith in allegedly omitting a creditor in her schedules.

DEBTOR'S OPPOSITION TO OBJECTION TO EXEMPTION OF $500,000.00 SPOUSAL SUPPORT

### III. Discussion

**<u>The $500,000.00 Asset is Spousal Support Subject
to Exemption Pursuant to (CCP) § 703.140 (b) (10) (d)</u>**

Movant posits that the $500,000.00 asset is not a spousal support because Debtor is in fact not entitled to spousal support pursuant to CA Family Code (FC) Section 4323 as allegedly argued by Debtor's former husband in the State Court during the dissolution proceedings.

<u>FC Section 4323</u> provides:

"(a) (1) ***Except as otherwise agreed to by the parties in writing***, there is a rebuttable presumption, affecting the burden of proof, of decreased need for spousal support if the supported party is cohabiting with a person of the opposite sex. Upon a determination that circumstances have changed, the court may modify or terminate the spousal support as provided for in Chapter 6 (commencing with Section 3650) of Part 1." [**Emphasis supplied**]

Even a cursory reading of the above provision would readily show the Movant's tenuous argument. The Family Code provision that Movant invokes to be the basis why Debtor is not entitled to spousal support clearly excludes from the rebuttable presumption-of decreased need for spousal support if the supported party is cohabiting with a person of the opposite sex-spousal supports duly agreed to by the parties in writing.

Movant must have forgotten that the $500,000.00 spousal support she was questioning was duly agreed to by both parties through the Stipulation for Judgment which Movant herself attached with her Objection as her evidence Exhibit 1 (Debtor's Exhibit E).

Moreover, said rebuttable presumption under FC Section 4323 does not even speak of non-entitlement to spousal support but merely a "rebuttable presumption of decreased need for spousal

support". Surely a decreased need for spousal support cannot, by any stretch of imagination, mean non-entitlement to spousal support.

Further, on December 8, 2011, the State Court approved a Stipulation between Debtor and her former husband regarding spousal support in favor of the Debtor. Said Stipulation and Order Regarding Support was filed and entered in the State Court's docket on December 12, 2011 [See Exhibit "A"]. In the said Stipulation and Order, Debtor's former husband was ordered to pay Debtor, among others, a monthly spousal support in the amount of $4,700.00.

In the hearing of February 6, 2013, the issue of modification of spousal support was raised by Debtor's former husband Craig Mattey, and heard by the State Court, on ground, among others, that Debtor was cohabiting with the opposite sex. On this very issue, the herein Movant, acting as the Debtor's attorney at that time stated in open court her position on the cohabitation issue vis-à-vis the Debtor's entitlement to spousal support. The Movant stated, as shown by page 2 lines 26 thru 28, and page 3 lines 1 thru 3 of the Reporter's Transcript of Proceedings of February 6, 2013 (Exhibit "B"), as follows:

> "**Ms. White**: Presently yes Your Honor. My client is cohabitating. And I will put quotation marks around that. There has not been spousal support paid since May of 2012. She has no job. No income. The business that was owned by the parties has been run into the ground despite the fact that Mr. Mattey continued to receive income through September last year.
>
> **Despite all of that she had nothing available to her. She has been left with the choice of I have a place to stay because someone said I can, or living on the streets. So for that purpose and that purpose alone.**
>
> Prior to the ceasing of spousal support, the payments that were court ordered at that time, my client had her own apartment and would to this day but for the fact that she had no source of income." [Emphasis supplied].

DEBTOR'S OPPOSITION TO OBJECTION TO EXEMPTION OF $500,000.00 SPOUSAL SUPPORT

6

So that it is clear that Movant's position at that time was that even though Debtor was cohabitating with someone, she was still entitled to spousal support for the reason that she was forced by the circumstances specifically by necessity since Debtor's former husband has failed to provide the court ordered spousal support at that time.

Now, Movant is inexplicably claiming that Debtor is somehow not entitled to spousal support despite the fact she argued the opposite and a Judge ruled otherwise during the hearing of February 6, 2013.

The sudden reversal of Movant's legal posture regarding Debtor's right to receive spousal support is obviously suspect in the light of the circumstances where the Movant's legal services were terminated by the Debtor.

Also, on February 26, 2013, the State Court issued an Earnings Assignment Order for Spousal Support wherein the former husband's employer was ordered to pay part of the latter's earnings in favor of the Debtor in the amount of $2000.00 as spousal support [See Exhibit C]. And on May 2, 2013 another Earnings Assignment Order for Spousal Support was issued by the State Court increasing the monthly spousal support by another $200.00 per month to make up for the arrearages [See Exhibit D].

Clearly therefore, Movant's proposition that Debtor is not entitled to spousal support pursuant to a California Statute is farcical.

//
//
//
//
//

DEBTOR'S OPPOSITION TO OBJECTION TO EXEMPTION OF $500,000.00 SPOUSAL SUPPORT

**The $500,000.00 amount of spousal support is actually a limitation on the amount of spousal support that Debtor's former husband is obligated to pay the Debtor.**

The Movant implies in her Objection that the $500,000.00 spousal support that the Debtor will receive is in fact the Debtor's share in the alleged value of the businesses (imagined by the Movant to be $1000,000.00) previously co-owned by Debtor and her former husband cloaked as a spousal support to skirt tax laws as well as to prejudice creditors.

Apart from the Movant's imagination, there was nothing concrete that was submitted to support this implication.

Debtor submits that the amount of $500,000.00 was in fact a limitation on the total amount of spousal support that Debtor will receive, and the Debtor's former husband will be obligated to pay post-dissolution. It was never intended to be a lump sum pay out as the Movant suggests, as in fact said amount is payable in installment over a substantial period of time.

Moreover, it should be emphasized that said $500,000.00 is payable at a monthly amount of $2,336.00 for the first 12 months following the execution of the Stipulated Judgment, and at $2,500.00 per month after the first 12 months until the entire $500,000.00 is paid in full. Said amount is not therefore a lump sum payment as the Movant implies.

Support payments tend to mirror the recipient spouse's need for support. Thus, such payments are generally made directly to the recipient spouse and are paid in installments over a substantial period of time. Matter of Albin, 591 F.2d 94, 97 (9 Cir.1979); In re Smith, 436 F.Supp. 469 (N.D.Ga.1977).

<u>In Re Evert 342 F.3d 358 does not apply in the present case.</u>

Citing *In re Evert*, Movant implies, without an iota of evidence, that Debtor and her former husband "had a strong incentive to craft an agreement intended to circumvent the Family Code limitations on spousal support as well as deceive the bankruptcy court", suggesting that the "Court should scrutinize the agreement between the parties and representations made in the Petition".

Debtor submits that *In re Evert* is not applicable in the present case.

In *Evert*, the Court dealt on the issue on whether the Promissory Note issued by the husband in favor of the wife constitutes support or a property settlement. Also, in *Evert*, the support obligation undertaken by Husband, as well as the provisions on division of assets and liabilities are expressly indicated as contractual in nature and are not an obligation imposed by order or decree of the Court. Moreover, there is a separate provision in the Stipulation and Decree for alimony apart from the property settlement wherein the promissory note belongs.

However in the present case, the amount of $500,000.00 was expressly indicated by the parties as an amount limitation on the spousal support that the former husband will provide the Debtor, payable in fact on a monthly payment for several years. There was no promissory note to speak of, neither did the Stipulation indicate that the rights of the parties under the Stipulation are contractual in nature. Finally, there is no other separate provision on alimony except this subject amount.

Obviously by suggesting that the Court scrutinize the agreement on the basis merely of the Movant's unfounded presumption that the parties are in connivance to circumvent the Family Code and deceive the Court is an admission that in fact the Movant failed to muster the required burden of proving that the exemption claimed by the Debtor on the $500,000.00 spousal support is not available. Fed. R. Bankr.P. 4003(c); In re Hodes, 402 F.3d 1005, 1010 (10th Cir.2005).

DEBTOR'S OPPOSITION TO OBJECTION TO EXEMPTION OF $500,000.00 SPOUSAL SUPPORT

<u>Courts look behind the label of state decree if the language of the order is ambiguous.</u>

Movant suggests citing In re Chang [163 F 3d 1138 (9th Cir. 2000)] that the court is not bound by the characterization given to an obligation by a state court, therefore whether a debt is actually in the nature of support is a "factual determination made by the bankruptcy court as a matter of federal bankruptcy law".

Debtor submits that the Court should "look behind the label" only if the state court order is ambiguous [In re Korwin, 379 B.R. 80, 84 (Bankr. W.D.Pa.2007)]. In this case, the Judgment on Reserved Issues with the attached Stipulation for Judgment containing the spousal support provision subject of the objection is clear on the wordings, on the intent and the agreements.

**<u>The $500,000.00 Spousal Support
Is Necessary for the Debtor's Support
As Debtor is not "in good health" as
Argued by Movant</u>**

Movant alleges that the $500,000.00 spousal support is not necessary for the Debtor's support because the Debtor is in good health and capable of working and running a business.

The fact however is that the total amount of $500,000.00 spousal support was determined by the parties after a series of negotiations, and with particular consideration on the Debtor's ongoing health problems that make it hard for her to earn money. This fact was recognized by Debtor's former husband during the negotiations for the marital settlement agreement, and confirmed by him through the Declaration filed concurrently with this Opposition.

Moreover, the Debtor's health/medical condition is supported by her Neurologist, Philip B. Maurice, through a letter addressed to Debtor's former Divorce attorney dated September 12, 2013,

attached herewith as Exhibit "G". As stated in the letter, Debtor suffers from hypersomnia, a manifestation of narcolepsy. As a result she is tired throughout the day and must take naps that do not refresh her. Thus Debtor really cannot work. (See petitioner's declaration, paragraph 15, lines 5-12).

At present, and for the last 3 years, Debtor's only source of income was the spousal support she is receiving from her former husband.

So that for the Movant to allege that the monthly amount of $2,336.00 Debtor is currently receiving for her sustenance, transportation and living expenses is not necessary for her support is unconscionably self serving.

Debtor cannot work and the only source of her income is the spousal support. There is no evidence as glaring as these facts proving the Debtor's need for the spousal support from the former husband.

The fact that Debtor relies solely on the spousal support provided by the former husband for her living expenses and sustenance was even argued by the Movant herself, acting as Debtor's former Divorce Attorney during the hearing of February 6, 2013 in the State Court as shown by her statements quoted above in page 2 lines 26 thru 28, and page 3 lines 1 thru 3 of the Reporter's Transcript of Proceedings of February 6, 2013 (Exhibit B).

Therefore, from the very words of Movant herself, the Debtor's need for spousal support was a matter of necessity for Debtor's support.

**Debtor Did Not Act in Bad Faith.**

On the Alleged omission of a Creditor in Debtor's schedules.

Movant alleges that Debtor acted in bad faith when she omitted Thomas Habbick (hereafter "Mr. Habbick") in the list of creditors when in fact the Stipulation for Judgment includes a provision

DEBTOR'S OPPOSITION TO OBJECTION TO EXEMPTION OF $500,000.00 SPOUSAL SUPPORT

11

to pay him $25,000.00, which amount when paid the former husband will have the option to deduct said amount from the $500,000.00 spousal support.

The facts however are Mr. Habbick was not a creditor of Debtor but was instead a creditor of her ex-husband Craig Mattey. There is a provision in the Stipulation for Judgment at page 16, paragraph O, that Craig Mattey has the option of paying back Mr. Habbick the $25,000 that he is owed and that if he does pay it back Debtor's spousal support award will be reduced by the sum of $25,000.

The loan that was to be repaid to Mr. Habbick was taken out by Craig Mattey and Craig Mattey alone by way of checks that Craig Mattey received from Mr. Habbick in April of 2011 and December of 2011. The date of separation was February 9, 2011. Thus the debt that was incurred by Craig Mattey was post-separation and is not community property. The checks were made directly to Craig Mattey. As such, the debt is not Debtor's debt. That is why it was not listed in the petition. That is why the repayment is not a preferred payment as the debt was never Debtor's debt to begin with.

The marital settlement agreement mistakenly refers to the debt, at page 16, as belonging to both Husband and Wife. However, attached is a 5 page document (marked herewith as Exhibit "H") that contains copies of the 2 checks that were written to Craig Mattey and which definitely establish that the debt was not Debtor's and was Craig's debt alone. The bottom line is that Debtor simply wanted to make sure that Mr. Habbick was repaid money he was owed and Debtor was willing to take less money from her ex-husband to make sure that happens.

Moreover, said document (Exh. H) expressly states that the loans were personally guaranteed by Mattey's personal and business assets.

Filed with the Opposition is a Declaration by Mr. Habbick confirming that the loan he extended to Craig Mattey was his alone and did not include Debtor.

DEBTOR'S OPPOSITION TO OBJECTION TO EXEMPTION OF $500,000.00 SPOUSAL SUPPORT

12

Therefore, the above facts reveal that there was no bad faith on the part of the Debtor in not listing Mr. Habbick as her creditor because in fact he was not.

<u>Alleged failure to disclose that if Craig Mattey Closes any Major Real Estate Projects Debtor May Receive the Entire $500,000.00 in a year or two.</u>

Debtor is not aware of any provision in the Stipulation for Judgment that if Craig Mattey closes any major real estate projects Debtor may receive the entire $500,000.00 in a year or two. Debtor has painstakingly read and re-read the Stipulation for Judgment but has not found any provision close to the Movant's allegation.

In any case, even if this provision exists (but in this case, it does not), Debtor's former husband closing a major real estate project at this time or in the next years would be impossible. This is because the businesses currently have no more projects. The businesses were not worth anything and have been shut down.  With the businesses shut down, Debtor cannot reasonably expect any windfall from any of its projects, which by the way none exists.

The fact that the businesses previously co-owned by Debtor and her former husband were running aground was known to the Movant during that time that she represented Debtor in the dissolution proceedings. In fact during the hearing of February 6, 2013, as shown by the Reporter's Transcript of Proceeding (Exhibit B), Movant stated:

> "**Ms. White**: ……….**The business that was owned by the parties has been run into the ground** …."[Emphasis supplied]. Page 2 lines 1 thru 2, Transcript of Proceedings.

Moreover in page 3 lines 21 thru 24 of the Transcript (Exhibit B), Movant herself spoke about difficulty in obtaining information as to the business and "**the reason for the demise of the business**".

DEBTOR'S OPPOSITION TO OBJECTION TO EXEMPTION OF $500,000.00 SPOUSAL SUPPORT

Main Document    Page 14 of 16

Now given these circumstances, Debtor wonders how the Movant could again twist the facts and impute bad faith on the Debtor for allegedly not disclosing a possible windfall from the businesses that have been "run into the ground", and for all purposes are already "demised" in the very words of Movant herself.

**<u>There Were and Are No Business Assets for</u>**
**<u>Craig Mattey to Retain and Thus There Could</u>**
**<u>Not Have Been an Equalization Payment to Petitioner</u>**

As stated in Petitioner's declaration, the declaration of Craig Mattey, and as reflected in the Marital Settlement Agreement attached to Movant's motion, there were no business assets to divide between Kelly and Craig Mattey due to the fact that the businesses failed long before the agreement was reached and there were no assets for Craig Mattey to retain. Thus, despite what Movant contends the spousal support Order could not have been an equalization payment in disguise.

Out of the blue, Movant alleged that Debtor has valued their several real estate businesses at $1,000,000.000. Proceeding from this alleged valuation, Movant extrapolates that Debtor should be entitled to half of this amount ($500,000.00) as equalization payment, or her share in the community property since the former husband retained said assets worth $1000000.00. Movant alleged that Debtor failed to disclose these facts in her bankruptcy petition.

Debtor is amazed on how Movant concocted these allegations. There is no evidence that the businesses were worth $1,000,000 on the date of separation or that Debtor ever claimed they worth that much. The businesses were not worth anything and have been shut down. There is no value. That is why the divorce agreement does not identify them as businesses. And that is the very reason why in the Debtor's bankruptcy schedules, the businesses were valued at zero.

14

As confirmed by Craig Mattey in his Declaration concurrently filed with this Opposition, Debtor and he were in the business of building and developing communities of homes. At one time they had contracts for millions of dollars. Unfortunately, prior to their separation, the businesses fell apart due to a loss of contracts thus resulting in a lack of profitability. These businesses no longer operate in any form. [See Declaration of Craig Mattey, paragraph 9, lines 3-8].

As stated with the Petitioner's declaration the businesses were not worth anything, have been shut down and are in the process of being dissolved by the business CPA. Attached to Petitioner's declaration as Exhibit "D" is a true and correct copy of a letter from the business CPA Rodney J. Guarino confirming the fact that the companies are being dissolved and that none of the companies in question have assets to distribute. Simply put, the businesses have no value and there were no assets to distribute or retain.

**Chapter 7 Trustee Has Already
Determined that the Case has No Asset**

After two 341a meetings held by the Chapter 7 Trustee, the latter has already determined that "*…that there is no property available for distribution from the estate over and above that exempted by law…*" [Docket Document No. 11].

While the Court is not bound by the Chapter 7 Trustee's determination, Debtor submits that the said determination is persuasive indicia that all assets listed by the Debtor are properly exempted, including the spousal support which Movant is presently objecting to.

This is inevitable because Section 323 (a) of the US Bankruptcy Code designates the trustee as the representative of the Estate, charged with protecting the interests of all estate beneficiaries - namely, all classes of creditors, including those holding secured, administrative, priority, and non-

priority unsecured claims, as well as the debtor's interest in exemptions and in any possible surplus property. The trustee should administer the estate so as to maximize the distribution to the beneficiaries. To represent the estate, the trustee must secure for the estate all assets properly obtainable under applicable provisions of the Bankruptcy Code, object to the debtor's discharge where appropriate, defend the estate against improper claims or other adverse interests, and must liquidate the estate as expeditiously as possible for distribution to creditors.

In this case, the Chapter 7 was satisfied after examining the Debtor and in fact has already filed a No-Asset Report in this case.

## CONCLUSION

FOR ALL THE FOREGOING, it is respectfully prayed that the Movant's Objection to Exemption of $500,000.00 Spousal Support be overruled. Other relief deemed just and equitable under the premises is likewise prayed for.

Dated: May 13, 2014

Respectfully Submitted:
Law Offices of Brent George
By:

*Brent D. George*
Brent D. George, Esq.
Counsels for Debtor